

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to: | ) | No. 37598-6-III |
| | ) | (consolidated with |
| L.L.† | ) | No. 37599-4-III, |
| | ) | No. 37600-1-III) |
| ——————————————————— | ) | |
| | ) | |
| In the Matter of the Parental Rights to: | ) | |
| | ) | |
| S.L. | ) | |
| ——————————————————— | ) | UNPUBLISHED OPINION |
| | ) | |
| In the Matter of the Parental Rights to: | ) | |
| | ) | |
| J.L. | ) | |

PENNELL, C.J. — D.L. appeals orders terminating the parental rights to three of his

children, L.L., S.L., and J.L. We affirm.

## FACTS

In 2015, the mother of D.L.'s children was killed in a drive-by shooting.

The children were present with their mother at the time. The identity of the mother's

---

† To protect the privacy interests of the minor children, we use their initials
throughout this opinion. Gen. Order for Court of Appeals, *In Re Changes to Case Title*
(Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.
wa.gov/appellate_trial_courts.

assailant is unclear from the record. However, there is no indication D.L. had any involvement. D.L. assumed custody of the children after their mother's death. At that point, an investigator from the Department of Children, Youth and Families (DCYF) contacted D.L. and offered no-cost grief counseling. D.L. declined, explaining he did not believe in counseling.

D.L. was arrested in 2017 on assault charges pertaining to his girlfriend and an older son.[1] D.L.'s three children were then placed in out-of-home care and found to be dependent. The children were discovered to have severe behavioral problems. The older two children were diagnosed with posttraumatic stress disorder (PTSD). The youngest child was diagnosed with acute stress disorder. All three children were found to need specialized care, including counseling, emotional support, and stable living environments.

D.L. was eventually convicted of charges related to the assault and sentenced to a term in prison. The dependency disposition orders related to D.L.'s children recommended D.L. undergo a "chemical dependency assessment and follow all recommendations; random [urinalysis]; parenting education; a Domestic Violence Perpetrator's assessment and follow all recommendations and treatment; [and] obtain safe

---

[1] The older son is not part of the current case.

and stable housing." Report of Proceedings (RP) (Mar. 13, 2020) at 279. D.L. agreed to comply with court-ordered services while incarcerated.

During his time in custody, D.L. participated in a mental health evaluation, drug and alcohol treatment, and parenting classes. Unfortunately, D.L. was removed from services after behavioral problems caused him to be placed in segregation. D.L.'s placement status also prevented him from having visits with his children. D.L. was released from custody in March 2019.

Upon his release from prison, D.L. received referrals for services. He also obtained employment. Although petitions had been filed seeking to terminate D.L.'s parental rights, disposition was continued to allow D.L. to participate in services. Trial was eventually set for early 2020.

D.L. progressed in services for several months. However, problems began in July 2019. At that point, D.L. started missing some of his visits with the children. DCYF also received a referral regarding an alleged domestic violence incident between D.L. and his girlfriend. In August, D.L. stopped participating in urinalysis testing. The next month, he stopped attending parenting classes. By October, D.L. stopped attending domestic violence perpetrator's treatment and fell out of contact with his case worker.

D.L. finally resumed contact with his case worker in mid-December 2019, after two months of no communication. D.L. was asked if his disappearance had been due to drugs. He responded that "it was more than that." RP (Mar. 13, 2020) at 314. Once contact resumed with the case worker, D.L. made efforts to rejoin his domestic violence perpetrator's class and his parenting class. The domestic violence class provider was willing to allow D.L. to rejoin, but he had doubts about whether D.L. would be successful. The parenting class provider did not re-enroll D.L. as there was no longer space in the class.

D.L. filed a motion to reestablish visitation with his children. A hearing was held on January 2, 2020, but D.L. failed to show. The motion for visitation was denied.

On January 21, 2020, D.L. was again arrested for domestic violence against his older son and his own mother. The incident resulted in a finding of abuse by D.L. against the older son.

The termination trial was held in March 2020. At that point, J.L. was 11-years-old, S.L. was 8, and L.L. was 7. The children had been living away from D.L. for approximately 33 months. At the conclusion of trial, the court terminated D.L.'s rights to the three children. D.L. now appeals.

ANALYSIS

Judicial termination of parental rights involves a two-step process. The first step focuses on parental fitness. Under this step, the DCYF must show parental unfitness by clear, cogent, and convincing evidence, including proof of the statutory factors set forth in RCW 13.34.180(1). RCW 13.34.190(1)(a)(i). If the initial termination burden is met, the second step focuses on the child and assesses whether the preponderance of the evidence shows termination would be in the child's best interests. RCW 13.34.190(1)(b); *In re Parental Rights to K.M.M.*, 186 Wn.2d 466, 478, 379 P.3d 75 (2016).

D.L.'s appeal focuses on two of the statutory factors regarding parental fitness as well as the best interests of the child.

*Parental fitness—necessary services*

D.L. contends DCYF failed to provide him with necessary services as required by RCW 13.34.180(1)(d). Specifically, D.L. complains that DCYF never offered training to help him understand his children's special behavioral needs. Given the severity of the children's problems, D.L. argues his ability to parent his children depended on acquisition of appropriate skills and knowledge.

D.L. may be correct that educational services regarding his children's special needs would have been necessary prior to parent-child reunification. But this does not

help D.L.'s case. Unfortunately, D.L. never reached a point in the dependencies where he was close to reunification. During the dependencies, D.L. never gained control of his substance abuse or his explosive temper. Yet these were his primary parenting deficiencies. Given D.L.'s inability to address the most significant barriers to reunification, knowledge about his children's special needs would not have changed the outcome of his case.

A trial court can make a finding that necessary services have been provided if additional services would be futile. *In re Welfare of C.S.*, 168 Wn.2d 51, 56 n.2, 225 P.3d 953 (2010). That is what happened here. Clear and convincing evidence shows that providing training on his children's behavioral needs would not have altered D.L.'s inability to regain custody of his children. Given this circumstance, we will not disturb the trial court's assessment of parental fitness as to RCW 13.34.180(1)(d).

*Parental fitness—ability to remedy deficiencies in near future*

D.L. claims the trial court erroneously found he would be unable to remedy his parental deficiencies in the near future, as contemplated by RCW 13.34.180(e). D.L. complains the trial court took too narrow a view of what constituted the near future for his children. The trial court's findings indicated the near future for the children was now.

But given their ages, D.L. argues his children had a longer vision of what constituted their foreseeable future.

At trial, there was some testimony that the foreseeable future for D.L.'s children was immediate. This may have been an overstatement. Nevertheless, the clear and convincing evidence still supported the trial court's finding that D.L. had little likelihood of remedying his parental deficiencies in the near future. By the time of trial, almost 33 months had elapsed since D.L.'s children were removed from his care. Yet D.L. was still in the early stages of addressing his parental deficiencies. According to the trial testimony, D.L. would need at least another year before he would be able to complete some of his court-ordered services. The witnesses at trial were unanimous that another year was too long for the children to wait for permanency. Ample evidence supported the trial court's finding under RCW 13.34.180(e).

*Best interests of the children*

D.L.'s final claim is that the evidence did not support the trial court's finding that termination of parental rights was in the best interests of his children. This argument rests on D.L.'s contentions regarding parental fitness. Because we affirm the trial court's finding regarding unfitness, we reject D.L.'s arguments regarding the best interests of his children.

7

Nos. 37598-6-III; 37599-4-III; 37600-1-III
*In Re Parental Rights to L.L., S.L. & J.L.*

## CONCLUSION

The orders terminating parental rights are affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____, C.J.
Pennell, C.J.

WE CONCUR:

_____          _____, J.
Lawrence-Berrey, J.                        Fearing, J.

8